Good afternoon, Your Honors, and may it please the Court, my name is Richard Whitney, appearing for the defendant appellant, Lortes Thomas, on his direct appeal. In this appeal, I'm asking this Court to uphold two vital principles of law, one of which is well settled, the other supported by the elementary precept that courts should act consistently with their own findings. Specifically, the first principle is that where a defendant's fitness to stand trial is at issue, a court may not find a defendant fit by simply adopting the conclusion of a psychiatric expert as its own without some showing that it made its own inquiry and affirmatively exercised its own judicial discretion. Let me ask you about that. My understanding is that these reports were stipulated to you. Assumedly, the trial judge read them and the reports did not inspire any questions or a notice of contradictions or anything. So what would you suggest the trial court should have done that it did not do? Well, it should have at least put something on the record to indicate that it had observed Mr. Thomas that day. It may have asked some follow-up questions, it may have asked for argument, but there had to be something according to our case law to indicate that it wasn't just rubber stamping the, in this case, psychologist's opinion, that this individual was fit based on a two and a quarter page paper. I'm not sure what else the trial court should have done specifically. Remember, the Gillen case, yes, the Gillen case, that is relevant because what she said in her report, the summary report, was, well, the treatment team found that he had passed certain tests. Well, what does that mean? Who's the treatment team? It may not have included her. If it had been, as in Gillen, where there was a licensed clinical social worker, and that opinion would not have been sufficient. So that might have been something pertinent. All we have is this summary report saying the treatment team said he passed this test showing that, well, he can understand what's going on in the courtroom. That would not be sufficient. Mr. Thomas was there, so the court could have asked at least a few perfunctory questions of Mr. Thomas just to maybe affirm the stipulation. Do you understand what your attorney does in the courtroom? It could have been at least a few things showing that it was not simply literally rubber stamping the psychologist's opinion. As a matter of fact, it didn't even say that it had read the report. Now, I agree with Your Honor that, okay, presumably the judge did that, but he didn't even go that far. He just said, this will be the finding of the court. I apologize for interrupting as you've been thought. The court did, in fact, question the defendant with regard to his understanding of the speedy trial rights, and would that not consist of enough? That was on a different time. That was on a different date. In fact, we really have quite a long history. One of the other things that I think, not the central issue, but maybe should concern us is the four-year gap in time between this finding of the court and the actual trial. In between, there were a number of other things that occurred. A psychiatrist had found that he didn't understand his Miranda rights, so that evidence was suppressed, that he didn't have the capacity to understand that. A psychiatrist found that he would qualify for a guilty but mentally ill plea. In the course of that, that is when Dr. Cuneo, the psychiatrist, advised the court that it would be a good idea to ensure that he was fit by following the two prescribed methods, one of which was, during the trial, ask him to repeat back, not just ask him yes or no questions. Do you understand what's going on? But ask, repeat back and describe in his own words what's going on, which the court, and that's my second issue, the court actually adopted that. The state agreed that was a good idea. Defense and the court all agreed this was a good idea and a necessary idea, and yet the court didn't actually do it, which is another extraordinary circumstance about this case. Just out of curiosity, in one part of that, addressing that exact issue, the court did periodically ask the defendant if he understood what was going on. I think his response was yes, but then at one point defense counsel stated she believed that the defendant understood what was going on. Is that not correct as well? One time, I believe, maybe twice, yes. Is that sufficient to suggest, I mean, was that defendant's attorney suggesting that he understood what was going on sufficient to be in compliance with the court's own rule to ensure that the defendant understood what was going on? Well, I don't, clearly it was not in any manner literal compliance with the rule because the idea is to get this from the defendant himself. And secondly, we don't know on what basis the attorney made those statements. So I don't think that that really adds much to this court's lack of confidence. And by the way, we are doing this in de novo review under the law. I don't think that that can add much real confidence to the very important due process concern that the person found guilty in this case was really capable of assisting his own counsel and really understood what was going on. In light of all of these circumstances, just tracking back briefly to the first argument that, you know, there has to be at least some affirmation on the record that the court, and I think this goes to your question a bit further, Justice Goldenhirsch, if, you know, if the court had even made a statement that, you know, I've not only read the report, I've considered it. And combining that with my own observations, the defendant, I find, if he'd even, if the court had even done that much, I think that probably would have satisfied the standard, but he didn't do that much. In fact, even the ruling the court did make was somewhat ambiguous, and it just said that will be the finding of the court. Not even making clear was that the court's finding that he's fit or just I'm finding that that's what the psychologist would have said. I mean, it was that ambiguous, that vague. And in, I cited eight different cases from every district of the appellate court except this one that basically says that's not enough. The Green case out of the first district, the Gibson case out of the first district, the Assang case out of the first district, the Cook and Contorno cases out of the second district, Cook being the one that's very, very close to this case, the Clear case and the Thompson case out of the third district. All of these cases essentially say the same thing. The court cannot just passively accept a report like this, stipulated to or not, even if the conclusion is stipulated to and the contents are stipulated to, though that by itself is not going to be enough. The only case that was the outlier case was the Shaw case out of the fourth, and yet the fourth district came around a year later in the Gillen case and said, well, we're following Cook. Didn't expressly overrule Shaw, and I pointed out in the reply brief how you can reconcile Shaw, a couple of ways you can do that. But in any event, it clearly sticks out like a sore thumb in the jurisprudence here. It doesn't go along with the rest of it. I've already kind of spoken to the second issue where, you know, if you look at all these facts, basically the best case you can make is, well, maybe he was borderline fit. You know, because he was found unfit, and then he was found fit based on this two and a quarter page summary. And we have all these other factors, the Miranda ruling, the guilty but not mentally ill ruling. And so clearly, at the party's suggestion and the court agreeing, just to be on the safe side to ensure that he is fit, we have to follow these protocols. One being to try to simplify terms, and I'm not relying on that. The court can judge on its own whether or not the court really did that. I think it's pretty clear it really didn't. Granted, that's a little problematic. How do you simplify, you know, every single thing when you have like an expert arsonist testifying? But still, it should have done more. With that, I will reserve the rest of my time for rebuttal. Thank you. Thank you, counsel. Counsel? Thank you, your honors. Your honors, counsel, may it please the court. Kelly Stacy appearing on behalf of the people. The case law concerning stipulations in fitness cases turns on whether there was a stipulation to the fact of fitness or a stipulation as to what the opinion testimony would be, which oftentimes relies on reports of a psychologist or a psychiatrist. The People v. Shaw case that Mr. Whitney referred to was a case cited by the state. And in People v. Shaw, the 4th District reviewed the cases that were cited by the parties in this case. And the Shaw stipulation is very similar to the stipulation that we have in this case. The psychologist report was the only evidence offered by the parties. And the Shaw court found it was proper for the trial court to accept the stipulation of the parties concerning what the expert would testify to, as well as his conclusion that the defendant was fit. So I think there's a clear distinction in the case law. Is the judge just saying, oh, the psychologist found this person fit, so he's fit? Or is the judge saying, hey, based on the stipulation of the parties, that this person would be called as an expert? He's an expert in the field of clinical psychology. And his determination is the person is fit for trial. Based upon that, we accept the stipulation of the parties, and the court finds the person is now fit. It's a subtle distinction, and I think that's why in the Shaw case, Justice Steigman wrote a special concurrence pointing out that the defendant's argument, which is very similar to the argument presented here, if it's accepted, it would require a trial court to, according to his words, utter magical incantations that are really unnecessary and provide no additional or meaningful protections for a defendant. This court should rely on the People v. Lewis case, which, incidentally, the Shaw case actually also relied on, and conclude that the trial court properly accepted the parties' stipulation to the expert's report. There's absolutely nothing in this record, including defendant's statement and allocution made at sentencing, that would indicate he was unfit for trial. And the defense further builds on the magical incantations argument, contending the trial court did not follow the special provisions agreement by asking specific questions of the defendant to make sure he understood the proceedings. And Justice Goldenherz and Justice Barberis touched on this issue, but what we have here under the special provisions on May 20th, 2014, defense counsel, and this was during the jury trial, defense counsel asked the court, Judge, the only thing we ask to put on the record is we would request that the court inquire as to Mr. Thomas, whether he understands what is going on, and have him explain in his own words what has happened to him. Up until this point. At that time, the court asked the defendant, all right, Mr. Thomas, do you feel you understand? And the defendant cut off the judge's question. He responded, yes, your honor. The court asked everything. The defendant answered, yes, your honor. And then the court asked, do you wish to comment on your understanding as to what's occurred so far? Meaning, can you put in your own words or would you like to put in your own words what you believe is happening in these proceedings? The defendant answered, no. So the court gave the defendant an opportunity to explain in his own words what was occurring. The defendant declined to do that. Then on May 24th, 2014, during the afternoon portion of the jury trial, defense counsel asked the court, Judge, we would ask you to inquire with Mr. Thomas as to whether he understands what's going on. And this is what Justice Barbera has referred to. The court responded, all right, Mr. Thomas, do you feel you understand this? Defendant answered, yes, your honor. The court responded, okay, very good. Then immediately after that, defense counsel told the court, and Judge, I would note for the record that during breaks, Mr. Thomas and I have discussed this case. We've discussed any questions that he has, and he doesn't seem to have any questions about what is going on. Here, the trial court did attempt to ask the questions and follow the special provisions order. Defendant declined. Defense counsel informed the court there didn't seem to be any problem with him understanding anything. So what is the trial court supposed to do then? Force these answers out of a defendant? It seems to me that would give a defendant way too much power in this type of a case and allow way too much error to possibly be injected into the case. I'd like to comment on a couple of cases the defense cited. The first one is in the People v. Contorno case. At the fitness hearing in that case, both parties stipulated to the psychiatrist's report. The trial court in that case then stated, all right, we'll show pursuant to stipulation then, the psychiatrist finds the defendant fit to stand trial. There was no further discussion on the issue, and the court entered a written order stating that pursuant to the people and defense stipulation to the finding of Dr. Ali, defendant is fit to stand trial. That's very different than what we have in this case with a stipulation that Dr. Hollibaugh, an expert in clinical psychology, filed a report dated October 14, 2010, finding the defendant has achieved legal fitness. The parties stipulate Dr. Hollibaugh, who is a clinical psychologist and an expert on the issue of fitness, would testify consistent with her written report dated October 14 that the defendant has achieved legal fitness and is able to understand the nature of the charges against him in cooperating in his defense. As such, the court finds based on the stipulation of all parties that the defendant has achieved legal fitness and is able to understand the nature of the charges against him and cooperate in his defense. I would note that this is found at the state's brief at pages three and four. The entire order says the court finds. So it appears to me the court is making those findings in the case, and it's a lot different than that Contorno case relied on by the defense. The other case that I wanted to talk about that the defense cited is People v. Cook. In People v. Cook, the fitness hearing was held a year after the report from the doctor was filed, even though the statute requires that hearing to be held within 45 days of the report. The appellate court also noted, and defense kind of makes light of this in the reply brief, that a different judge had been assigned to the case. So this is a judge who had not had an opportunity to observe the defendant, as opposed to our case, where by his own statements to the court, this guy had been trying to get his trial to be held for five years. So we have the court in this case, Judge Fiss, was able to observe this defendant for five years, including him going against his own attorney that, hey, I want my trial to go forward. Well, your attorney has another murder case right now, and she's asking for a continuance. I don't care. I'm tired of waiting. I want my case to go forward. I don't believe there's any evidence at all in this record to show that this defendant was not fit. In the Cook case, we had a defendant there who was unable to manage his own affairs. He received services from a program for adults with developmental disabilities. The defendant in Cook could not even live on his own. Someone had to remind him to take showers, how to dress appropriately, and to even set an alarm clock so he could get up. The defendant here lived in his own home. And although the defense grabs onto the Cook case, it tries to depart from the Cook case on the issue that the state also raised was, if this court finds there's some sort of an ambiguity on that issue of fitness, the remedy is a retrospective fitness hearing. That's exactly what happened in Cook, and the only evidence presented in that Cook case on defendant's fitness was a report of the psychiatrist that the parties stipulated to. It's particularly appropriate in a case where the only evidence presented concerning fitness is that report. It's certainly something a trial court can look at again, even though I don't believe that is necessary in this case. If this court is determined ambiguity exists, that is the appropriate remedy as a remand to the trial court for a redetermination on the issue of fitness. See, I'm at my yellow light, but if there being no questions, the state would respectfully ask you to affirm. Thank you. Thank you, Your Honor. Responding to a few points, counsel states for the state says that, well, there's a clear distinction in the case law between cases in which the court stipulate to the conclusion of the expert and cases where the court stipulates to the actual findings or the bulk of the report itself. But that was exactly the situation in Cook. In Cook, the stipulation very clearly said they were stipulating to the expert's findings in his report as well as the conclusion and would testify consistently with the reports finding the defendant fit. With no discussion or comment, the trial court said that, well, we'll find the defendant fit based on the stipulation and the expert's opinion. And that's exactly what the court in Cook rejected. That is not sufficient. You have to go beyond that. You have to put something in the record showing that you've made your own independent assessment and not simply say that, well, I'll accept that and that's going to be good enough. So, yes, some of the cases do make that distinction. But in the Cook case, at least, it was clear that even when you stipulate to all the findings and all the facts, it's still not good enough to meet the standard. The counsel argues that, well, there was nothing showing that Mr. Thomas was unfit for trial. Wait a second, that's not the standard. He was found unfit initially. Once a defendant is found unfit, that shifts the presumption of fitness. And that makes a huge difference here. That raises the bar for before you can then find that he is fit. In addition to all the other factors we had during this four-year interrenum between the finding of fitness and the trial. Counsel refers to Mr. Thomas' statement in elocution. Well, the court will be able to read that for itself. But I would submit to the court that statement in elocution after you've already been found guilty is not exactly the most propitious time to decide, well, now I'm going to make my case and explain why I'm innocent. That's about the worst possible time. Not exactly a brilliant strategy doesn't exactly show that he really understood what was going on in his rambling statement. The opposing counsel argues that there was compliance with Dr. Cuneo's recommendations because the court asked Mr. Thomas if he had any comment to make. Well, that clearly is not complying with Dr. Cuneo's recommendations. How is that asking him to explain back in his own words what was happening? That's just asking another open-ended question. Do you want to comment on something? This is an individual whose IQ ranks in the bottom 0.4% on the scale. He may not even know what comment means. We don't even know that based on this record. So the fact that the court just asked him another open-ended question proves absolutely nothing. It certainly doesn't prove compliance with Dr. Cuneo's, with the order, the court's own order adopting Dr. Cuneo's recommendation. With respect to remedy in this case, I would call attention to what was argued in the reply brief. If this court agrees with me that under the circumstances of this case, we can have no confidence that he was fit at the time of this trial, that he was found fit, then I would suggest that the best remedy is to simply vacate the conviction, given all the extraordinary circumstances of this case, including a failure to comply with the court's own order. I know that some of the courts have looked at this Mitchell case, People v. Mitchell by the Supreme Court, where the court said that what was constitutionally forbidden three years ago is now compelled. That's an oft-repeated quote referring to what seems to be a trend favoring retrospective fitness hearings. But what is often left out, as the state left out, is what the court said afterwards, where it said that this is not a principled and intelligible development of the law. The Supreme Court was not endorsing this trend in the law. It was just observing that this was the trend, and saying that this was not a principled and intelligible development doesn't sound to me like it was embracing this trend in the law. I would submit that the better rule here, especially with these extraordinary circumstances in this case, is to do what the Assange case did in the First District, and simply vacate the conviction. Thank you very much. There's no further questions.